**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN WAUGAMAN, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 2:17-330 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Lenihan |
| CITY OF GREENSBURG, | ) | |
| OFFICER SHAWN DENNING, | ) | ECF Nos. 112, 115, 117 |
| SERGEANT JASON GAIN, | ) | |
| SERGEANT BRYAN PAINTER, | ) | |
| OFFICER ROBERT SHAPIRO, | ) | |
| LIEUTENANT W. ROBERT JONES, and | ) | |
| SERGEANT DONALD COLE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Presently before the Court are Motions for Summary Judgment filed by Defendant Bryan Painter and the Borough of South Greensburg (ECF No. 112), the City of Greensburg, Shawn Denning and Jason Gain (ECF No. 115), and Defendants Donald Cole, W. Robert Jones, and Robert Shapiro (ECF No. 117). For the reasons discussed below, the Motion for Summary Judgment filed by Defendants Bryan Painter and the Borough of South Greensburg (ECF No. 112) will be granted. The Motion for Summary Judgment filed by Defendants the City of Greensburg, Shawn Denning and Jason Gain (ECF No. 115) will be granted as to Defendant Gain and City of Greensburg, and denied as to Defendant Denning. The Motion for Summary Judgment filed by Defendants Donald Cole, W. Robert Jones, and Robert Shapiro (ECF No. 117) will be granted.

A.     RELEVANT FACTS

The following facts are taken from the parties' Concise Statements of Material Facts, Responses thereto and accompanying appendices (ECF Nos. 114, 130, 119, 120, 129, 131, 132, 133), and are undisputed unless otherwise indicated.

At approximately 11:18 p.m. on March 17, 2015, Plaintiff entered a vacant residence in the City of Greensburg to remove some amount of copper piping.  (ECF Nos. 114 & 130 ¶ 1.) City of Greensburg police officers Defendants Denning, Shapiro, and Cole were dispatched to this residence along with Defendant Officer Painter and Officer Chappell from the South Greensburg Southwest Greensburg Police Departments, respectively. (ECF Nos. 114 & 130 ¶¶ 2-3.) (ECF Nos. 119 & 129 ¶¶ 29-30.)  After it was determined that someone was inside the vacant house, City of Greensburg Officers Defendants Jones and Gain also arrived on the scene.  (ECF Nos. 119 & 129 ¶ 31.)

Plaintiff ignored commands to put his hands up and to drop to the ground.  (ECF Nos. 119 & 129 ¶¶ 33-34.)  Thereafter, Defendant Officer Denning grabbed Waugaman by the arm, took him to the ground, and handcuffed him.  (ECF Nos. 114 & 130 ¶¶ 6-7.)  (ECF Nos. 119 & 129 ¶ 34.)  Plaintiff was led by Officer Denning out of the residence with his wrists handcuffed behind his back.  (ECF Nos. 114 & 130 ¶ 8.)  As Defendant Officer Denning escorted Plaintiff out of the vacant residence and toward a City of Greensburg police vehicle, they were observed by Defendant Painter who was standing outside the residence and moving with them to the police car.  (ECF Nos. 114 & 130 ¶ 9.)

When he reached the police vehicle with Plaintiff, Defendant Denning released his grip on Plaintiff to unlock the vehicle.  (ECF Nos. 114 & 130 ¶ 10.)  When Officer Denning released his grip on Plaintiff, Plaintiff began running with his hands cuffed behind his back.  (ECF Nos.

114 & 130 ¶ 11.) Officer Denning began chasing Plaintiff on foot with Officer Painter running closely behind Denning. (ECF Nos. 114 & 130 ¶ 12.)

Officer Denning ultimately caught up to Plaintiff. (ECF Nos. 114 & 130 ¶ 14.) The two hit the passenger side of a parked car, then fell to the street's asphalt surface. According to Plaintiff, Defendant Denning lunged at Plaintiff, grabbed his neck, shoulder or head, and targeted Plaintiff's head into the passenger side window. Defendant Painter was within 15 feet of Plaintiff and Denning at the time. (ECF Nos. 114 & 130 ¶¶ 15-16.) According to Defendant Denning, he tried to grab Plaintiff somewhere on his back or shoulders as they were running "full tilt," and they both tripped forward and fell, possibly from their legs becoming entangled. (Denning Dep., ECF No. 114-6 at 23-25 (pp. 59-61).) Defendant Denning recalls that his arm hit against the parked car, and the right side of his face/head hit the roadway. (ECF Nos. 119 & 129 ¶ 48.) The rear passenger side window shattered and Plaintiff was rendered unconscious. (ECF Nos. 114 & 130 ¶ 17.)

The parties further dispute what happened next. Plaintiff testified that he kept coming in and out of consciousness. He testified that when he initially regained consciousness after his head hit the window, he saw maybe eight to ten cops at the scene, and that other than Defendant Officer Gain, he is not able to identify any other officers who were there. (Waugaman Dep., ECF No. 114-2 at 19 (p. 83).) Plaintiff further remembers seeing Denning's body half laying on top of him, and then he lost consciousness again.

After Plaintiff was taken down by Denning, Defendant Painter testified that he held Plaintiff down using his knee pressed against Plaintiff's buttocks area to prevent Plaintiff from getting to his feet so he could not attempt to escape again. Plaintiff confirms that Officer Painter had "physical" contact with him because he held him down with his knee pressed against his

buttocks.  (ECF Nos. 114 & 130 ¶¶ 24 & 19.)  According to Plaintiff, he could not get up because his hands were still cuffed and he went into a seizure which manifested itself in "tonic-clonic movement," and the inability to respond.  (ECF Nos. 114 & 130 ¶¶ 18-19.)

Thereafter, Plaintiff remembers sitting up still handcuffed and blood was pouring down from his face.  He asked why he was bleeding so badly and was told that he had road rash.  He lost consciousness again and woke up to being kicked in his stomach, on his sides, and in his head.  Plaintiff testified that he was kicked and stomped by one or more, but not all, police officers on scene.  (ECF Nos. 114 & 130 ¶ 23.)  At that point Plaintiff remembers there were "like three, maybe four[]" officers near him. (Waugaman Dep., ECF No. 114-2 at 17 (p.52).)  He remembers shouting out for his mother who lived nearby so the beating would stop, but he was told to shut up, that he was 35 years old and didn't need his mother.  The next thing Plaintiff remembers is being placed into the ambulance.  (Waugaman Dep., ECF No. 114-2 at 9 (p. 35).)

Defendant Painter radioed for an ambulance for Defendant Officer Denning and Plaintiff.  The ambulance was dispatched at 11:32 p.m. and arrived on the scene at 11:36 p.m.  Paramedics treated Plaintiff and transported him from the scene at 12:02 a.m. on March 18, 2015.  (ECF Nos. 114 & 130 ¶¶ 20-22.)  Daniel Mertz, the paramedic who treated Plaintiff, testified that when he arrived on scene he found Plaintiff sitting upwards, handcuffed, and covered in blood.  (Mertz Dep., ECF No. 132 at 48 (p. 12).)  Mertz further testified that Plaintiff had an open head injury and an altered mental status.  He wasn't able to answer Mertz's questions, was presenting with seizure-like activity, but was able to speak.  (Mertz Dep., ECF No. 132 at 48-49 (pp. 12-15).)  Plaintiff had uncontrolled bleeding from a laceration on his head of approximately seven inches.  (ECF Nos. 119 & 129 ¶ 96.)  Mertz also testified concerning his trip report where he noted that Plaintiff had some minor abrasions on his back, abdomen, and legs.  (*Id.* at 51 & 54 (pp. 23 &

34).)  When questioned as to whether he observed anything at the scene to indicate that Waugaman had been beaten, Mertz responded "no," and that Waugaman's injuries were consistent with his falling forward while handcuffed behind his back and being unable to break his fall.  (ECF No. 132 at 56 (p.44).)

Witnesses at the scene included neighbors Timothy Broderick, Douglas Basinger and Nicole Stillwagon. These witnesses gave statements to Westmoreland County Detective Randall Gardner, and two of them testified under oath.  None of these witnesses indicated that they saw any officers strike, punch kick or otherwise abuse Plaintiff.  (Gardner Report, ECF No. 120-3 at 9, 10, 11; Broderick Dep., ECF No. 133 at 41 & 42 (pp. 32 & 36; Stillwagon Dep., ECF No. 133 at 75-76 (pp. 36-37).)  Every officer on scene stated they did not see Officer Painter strike or kick the Plaintiff.  (ECF Nos. 114 & 130 ¶ 26.)  No witnesses to the chase and apprehension of Plaintiff stated that they saw Painter strike Plaintiff at any time or in anyway.  (ECF Nos. 114 & 130 ¶ 27.)  Officers Shapiro and Chappell who were at the scene testified that they did not see any officer kick Plaintiff.  (ECF Nos. 119 & 129 ¶¶ 66 & 77.)

Thereafter, Plaintiff Waugaman pled guilty to Resisting Arrest, Burglary and Possessing Instruments of a Crime with Intent.  Plaintiff asserts, however, that the force used to effectuate the arrest was unreasonable.  (ECF Nos. 114 & 130 ¶ 29) (ECF Nos. 119 & 129 ¶ 10.)  He alleges that as a result of this unreasonable force he seeks compensatory damages for pain, suffering and permanent disfigurement as well as punitive damages.  (Second Amended Complaint, ECF No. 48 at 18.)

B.     LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to

interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a) & (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id*. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

C.    ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

In his Second Amended Complaint, Plaintiff alleges that Defendants Denning, Gain, and Painter used excessive force (Count I) and that Defendants Shapiro, Cole and Jones failed to intervene to prevent Denning, Gain, and Painter from doing so (Count IV). Plaintiff also alleges state law claims for battery and assault against Defendants Denning, Gain, and Painter (Counts VI and VII, respectively), and sets out a stand-alone claim for punitive damages against these Defendants for their alleged use of excessive force (Count II). Finally, Plaintiff states a *Monell* claim against the City of Greensburg for failure to properly train and supervise its officers (Count III).

1.    Motion for Summary Judgment filed by Defendants Painter and the Borough of South Greensburg (ECF No. 112)[1]

---

[1] The Borough of South Greensburg also moved for summary judgment but was later terminated as a party Defendant as a result of a Stipulation of Dismissal with prejudice as to South Greensburg only (ECF No. 126). Therefore, the Court will not discuss the parties' arguments relating to South Greensburg. Relatedly, the official capacity claims against Painter have been dismissed as a result of South Greensburg's dismissal. *See Kentucky v.*

Plaintiff alleges that when he regained consciousness after the initial takedown by Defendant Denning, Defendants "Gain and Painter were stomping and kicking the Plaintiff about the head, torso, and legs." (Second Amended Complaint, ECF No. 48 ¶ 46.) In support of his Motion for Summary Judgment on the excessive force and related state law claims of assault and battery, Painter argues that he is entitled to judgment as a matter of law pursuant to *Jutrowski v. Twp. of Riverdale,* 904 F.3d 280 (3d Cir. 2018). Specifically, Defendant Painter argues that despite these allegations, Plaintiff is unable to identify or describe the officers that allegedly beat him after the takedown by Denning. Defendant Painter further argues that discovery revealed no witnesses indicating that Painter struck or kicked Plaintiff. (Painter's Brief in Support of Summary Judgment, ECF No. 113 at 5-9.)

In *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280 (3d Cir. 2018), the court of appeals was presented with the district court's grant of summary judgment on the issue of excessive force where one (1) of four (4) arresting officers kicked the plaintiff in the face, breaking his eye socket. *Id.* at 284. The defendants did not dispute that one of the officers kicked the plaintiff, but each of the four officers contended he neither inflicted the injury himself, nor saw the officer that did. *Id.* Plaintiff's face was pinned to the pavement when he sustained the blow and was unable to identify the perpetrator. *Id.* The district court, finding that a civil rights defendant must have personal involvement in the alleged wrongs, citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988), granted summary judgment in favor of the defendants. *Id.* at 285. In affirming the district court on this issue, the court of appeals noted the following:

> [I]n the face of motion for summary judgment, a § 1983 plaintiff
> must produce evidence supporting each individual defendant's
> personal involvement in the alleged violation to bring that

---

*Graham*, 473 U.S. 159, 165-66 (1985) (Suits against government employees in their official capacities "generally represent another way of pleading an action against an entity of which an officer is an agent.").

8

> defendant to trial. But [plaintiff] has not done so: As he concedes,
> after significant discovery, he has narrowed the potential universe
> of actors to those that were in his immediate vicinity, but he filed
> suit against only four of the five of them and still cannot "identify
> the actor that kicked him." Put another way, he admittedly seeks
> to proceed to trial against at least three defendants who are "free of
> liability," without any "ascertainment of [which] individual
> charged was the perpetrator of the constitutional deprivation[.]" . . .
> [T]hat is not a sufficient basis to survive summary judgment.

*Jutrowski*, 904 F.3d at 291-92 (internal citations omitted) (and discussing *Sharrar v. Felsing*, 128

F.3d 810 (3d Cir. 1997) (summary judgment affirmed where plaintiff could not identify which

officer on the scene dislocated his shoulder when handcuffed) and contrasting with *Smith v.*

*Mensinger*, 293 F.3d 641 (3d Cir. 2002) (reversing grant of summary judgment where plaintiff

could not see his five attackers but testified all were beating him; the extent of each officer's

participation was question of fact for the jury.)).

   Here, Plaintiff alleges that Painter beat him after Denning's takedown. Yet, Plaintiff has

come forward with no evidence to raise an issue of material fact that Painter personally

participated in stomping and kicking Plaintiff. Instead, the record reflects that Painter's only

physical contact with Plaintiff was his knee pressed against Plaintiff's buttocks area, to prevent

Plaintiff from attempting to stand up, (Painter Dep., ECF No. 131 at 160), and when Gain and

Painter placed Plaintiff in a sitting position with his back to a rear tire. (Shapiro Dep., ECF No.

133 at 116.) Specifically, Plaintiff Waugaman testified as follows:

>   Q  You testified that while you were on the ground
> somebody made the comment about road rash. You allege to have
> been kicked. You're not able to identify who kicked you; is that
> correct?
>
>   A  That is correct. There was more than one person
> kicking me. I can't recall who was kicking me because, one, the
> blood coming down into my eyes, and it was spots. It was just
> kicks.

9

Q      And do you have any idea how many officers were near you at that point in time?

A      I'd say like three, maybe four.

. . .

Q      Can you identify any other officers who were allegedly kicking you or beating you up after your head went into the car?

A      I can't remember.  Like I said, there was so much that was going on between the blood and me being kicked.  There was cops, feet.  I can't recall.  I can't say this guy did this, this guy did that.

(Waugaman Dep., ECF No. 131 at 19 (p. 52); 27 (p. 84).)

Consistent with the United States Court of Appeals Third Circuit precedent discussed above, if after extensive discovery, including fourteen (14) depositions and several investigative reports, Plaintiff is unable to identify the two (2) individuals who kicked him out of the three (3) to four (4) individuals near him at the time, then Plaintiff seeks to proceed to trial against named Defendants without any ascertainment of which individuals actually inflicted the constitutionally cognizable injury.  And where Plaintiff is unable to identify either of the kickers, at least two (2), and possibly more named Defendants will face the trial process who are "free from liability." *See Jutrowski,* 904 F.3d at 291-92.

Here, like *Jutrowski* and *Sharrar*, Plaintiff has failed to raise an issue of material fact as to whether Painter was one of the officers that allegedly beat Plaintiff after Denning's takedown. The record reflects that Plaintiff cannot identify Painter.  Moreover, no witnesses at the scene, including three neighbors, witnessed Painter kicking or otherwise abusing Plaintiff.[2]  More

---

[2] In a footnote, Plaintiff argues in the alternative that if *Jutrowski* is controlling, then Plaintiff has raised an issue of material fact regarding a police conspiracy to cover up the use of excessive force.  904 F.3d at 293-298 (finding plaintiff came forward with enough evidence to raise an issue of material fact concerning police cover-up to deny plaintiff access to the courts). In support of this conspiracy theory, one of the issues raised by Plaintiff relates to the

importantly, medical personnel who examined Plaintiff testified that his injuries were not consistent with a beating. Instead, medical personnel testified that his injuries were consistent with falling forward with his hands cuffed behind his back and his inability to break his fall.[3] In light of the court's directive in *Jutrowski,* the Court must grant summary judgment on Plaintiff's claims of excessive force.

In his responsive brief, Plaintiff argues that his inability to identify Painter as one of the Defendants who kicked him is irrelevant, because Painter was there and should have intervened to stop whomever was kicking him. (ECF No. 134 at 3.) Plaintiff's Second Amended Complaint, however, does not include a claim against Painter for failure to intervene. Plaintiff may not use his responsive brief as a vehicle for advancing new legal theories. *See McMahon v. Salmond*, 573 F. App'x 128, 135 (3d Cir. 2014) (discussing district court opinion citing *Bell v. City of Phila.,* 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")); *Anderson v. DSM N.V.*, 589 F. Supp.2d 528, 534 n.5 (D.N.J. 2008), *cited in Holland v. Simon Prop. Grp.*, 495 F. App'x 270, 272 n.4 (3d Cir. 2012); *Daimler Chrysler Servs. of N. Am.*, No. 04-6186, 2006 WL

---

absence of police dashcam evidence despite conflicting record testimony as to whether police officers had their emergency lights on, which in turn would activate police dashboard cameras. Deposition testimony reflects discovery regarding the recording system, downloading process and the fact that officers and supervisors had no ability to erase, delete or otherwise destroy video recordings. *See* Zucco Dep., ECF No. 132 at 111-122 (pp. 18-61); Jones Dep., ECF No. 131 at 212-213 (pp. 58-63). On May 16, 2018 at ECF No. 105, this Court entered a status conference minute entry wherein the Court made note of a possible spoliation issue. The Court instructed the parties to file a motion and attach supporting documentation if Plaintiff had credible evidence of the existence of dashcam video, and the parties could not agree to additional discovery. Plaintiff did not file any such motion, and therefore, failed to establish the existence of the video and that it was suppressed by the Defendants. *See* Jutrowski, 904 F.3d at 292 (discussing the denial of adverse inference instruction where plaintiff cannot establish the existence of dashcam video). But again, Plaintiff does not allege a conspiracy claim in the Second Amended Complaint.

[3] Plaintiff attempts to raise an issue of material fact with the expert report of Lisa DiMeo that Plaintiff was in fact kicked. First, whether Plaintiff was kicked is immaterial as to Painter and Gain because Plaintiff cannot identify them as the "kickers" out of at least three to four officers who were near him, or out of at least eight to ten officers who were on the scene. See *Jutrowski,* 904 F.3d at 291-92, 290-91. In addition, DiMeo did not review any of the numerous depositions of record, including the Plaintiff's. Her conclusions are woven into facts that do not exist of record: Plaintiff did not testify that his head was "slammed" or kicked into an existing pool of blood on the road, but that he was kicked in a sitting position. An expert opinion must reliably flow from the facts at issue. *See* Fed. R. Evid. 702 (d) (expert must reliably apply principles and methods to facts of the case).

361385, at *11 (D.N.J. Feb. 15, 2006) ("claims [that] were not alleged in the complaint [] cannot be raised for the first time in opposition to a motion for summary judgment").  S*ee also Shanahan v. City of Chi.,* 82 F.3d 776, 781 (7th Cir. 1996); *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R Civ. P. 15(a).").

Likewise, because common law tort principles necessarily inform our interpretation of § 1983 jurisprudence and the requirement of personal involvement, Plaintiff's state law claims against Painter for assault and battery (Counts VI & Count VII) fail as a matter of law for failure to identify Painter as one of the officers who allegedly beat Plaintiff.  Therefore, summary judgment must be granted as to these claims as well.  Plaintiff's stand-alone claim for punitive damages against Painter (Count II) in his individual capacity must likewise be dismissed.

Therefore, Defendant Painter's Motion for Summary Judgment (ECF No. 112) on Plaintiff's claims for excessive force, assault and battery will be granted.

2.      Motion for Summary Judgment filed by Defendants Denning and Gain (individual capacity)

### GAIN

First, Defendant Gain is entitled to judgment as a matter of law for the same reasons relating to Defendant Painter at C.1, *supra*.  Plaintiff has failed to raise an issue of material fact that Gain beat Plaintiff after the takedown by Denning.  Plaintiff argues that he identified Gain as one of the officers who allegedly beat him, citing to his deposition.  A careful reading of Plaintiff's deposition, however, reveals that Plaintiff identifies Gain as being on the scene, but as emphasized in the language quoted from his deposition above, Plaintiff repeatedly testifies that he cannot identify the officers who kicked him. Plaintiff's testimony as to Gain relates to the fact

that Plaintiff recognized him at the scene, but Plaintiff does not indicate that Gain kicked him.

After Plaintiff testified unequivocally that he could not identify the officers who beat him

because there was blood in his eyes, Plaintiff testified as follows:

> Q    And do you have any idea how many officers were
> near you at that point in time?
>
> A    I'd say like three, maybe four.
>
> Q    Was there ever a point in time while you were on
> the ground where you were able to identify any
> particular officer either by voice or by sight?
>
> A    Officer Gain.  Like I said, I thought one of them
> was Officer Rullo, but I was informed that he
> wasn't there that night.
>
> Q    How were you able to identify one of the officers as
> Officer Gain?
>
> A    I've had previous contact with him before.
>
> Q    Did you recognize his face?
>
> A    Yes.
>
> Q    So you were able to see at that point in time clear
> enough that you could recognize Gain?
>
> A    Yes.
>
> Q    And were you still on the ground when you were
> able to do that?
>
> A    Yes.
>
> Q    When you were able to see Officer Gain, did you
> see anybody else that you can describe?
>
> A    At this time I can't recall.  There was so much
> going on at that time.
>
> Q    What else was going on that you remember?

> A    I was being kicked.  I have blood coming down in
>       my eyes.  I don't really know what's going on.  I'm
>       trying to get this to stop.  It was just a lot going on
>       at that time.

(Waugaman Dep., ECF No. 131 at 20-21 (pp. 52-54).)

Plaintiff has failed to raise an issue of material fact as to whether Gain was one of the officers that allegedly beat Plaintiff after Denning's takedown.  Summary Judgment on this issue must be granted in favor of Gain on Plaintiff's excessive force claim, and for the same reasons relating to Painter, on the assault and battery claims.[4]  Plaintiff's stand-alone claim for punitive damages against Gain (Count II) in his individual capacity must likewise be dismissed.

## DENNING

In Support of his Motion for Summary Judgement, Defendant Denning argues the following: 1) Because Plaintiff was attempting to evade arrest by flight, Denning was justified in using "substantial force" as a matter of law citing *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997).  Therefore, when Denning attempted to grab Waugaman from behind while both were running and Waugaman refused to heed police commands, Denning's takedown was objectively reasonable; and 2) if the Court views the force used by Denning to be objectively unreasonable under the circumstances, Denning is protected by qualified immunity because a reasonable officer under the circumstances he faced would not have known he was violating clearly settled law.

Plaintiff responds that material issues of fact remain as to whether Denning's actions in apprehending Plaintiff were an excessive use of force.

In order to make out a claim for excessive force as an unreasonable seizure under the Fourth Amendment, Plaintiff must show that a seizure occurred and that it was unreasonable.

---

[4] Plaintiff has not alleged a failure to intervene claim against Defendant Gain, and as discussed at C.1., *supra* concerning Defendant Painter, Plaintiff cannot use his responsive brief to amend his Second Amended Complaint.

*Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). Here, the parties do not dispute that there was a seizure of Plaintiff. Consequently, the only issue before the Court is whether the force used to effectuate the seizure was objectively reasonable.

Whether the use of force is objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). In *Graham*, the United States Supreme Court cautioned that in applying the objective reasonableness test, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," will be deemed unreasonable. Instead, "[t]he calculus of reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* at 396-97 (internal quotations and citation omitted). In addition, the United States Supreme Court has emphasized that each case alleging excessive force must be evaluated under the totality of circumstances. *Id.* at 397. *See also Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004). In *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit added some additional factors for consideration:

> Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Id. at 822.

Here, Plaintiff has come forward with an issue of material fact as to whether Defendant

Denning used excessive force in the course of apprehending Plaintiff. Plaintiff testified as to the

following when he attempted to flee from Denning as Denning was unlocking the police vehicle:

> Q      What pieces are you able to recall?
>
> A      I remember Denning leading me out, and his car
> was parked on Westminster Avenue, and he led me
> up to the car. I was handcuffed behind my back,
> and when he released my arm to open up the door I
> turned around, and I ran. I made it not too far, I
> mean, I don't know how far, not too far.
> *Then I felt a hand to either the back of my*
> *neck or the back of my head being shoved towards*
> *the car window.* As soon as my head hit off the
> window, I was knocked out, and I kept coming in
> and out of consciousness. At one time I heard,
> officer down, and I seen [sic] Denning's body was
> kind of laying on me but half off of me facing the
> passenger side front window or
> front tire, I mean, and I passed back out.

(Waugaman Dep., ECF No. 131 at 15 (pp. 34-34).) (emphasis added).

As to the same event, Defendant Denning testified as follows:

> Q.      Now, when you approached him from behind, what
> did you do to try to regain control of him? Where did you put your
> hands on [sic]?
>
> A.      Somewhere on his back or shoulders, somewhere in
> that general area. I tried to grab him in like a bear hug type of –
> somewhere in his back. That's the only thing I could grab ahold
> of, was his back.
>
> Q.      Did you put his [sic] hand on top of his shoulders,
> with your palms down on top of his shoulders?
>
> A.      I don't remember where I put my hands.
> Somewhere on his back. I don't know if I tried to grab him by his
> jacket or hoodie or somewhere on his back shoulder area.
>
> . . .

Q.      Okay.  So you grab him somewhere on his back, as you testified, maybe around his shoulder area.  And then, what, did you –in doing that, you would have kind of pushed him a little forward, right, because your momentum's now adding onto his momentum; right?

A.      I didn't intentionally push him forward.  I'm sure that after I grabbed him, *as we tripped, we both fell forward because of the way we were going.*

. . .

Q.      How did you come to fall to the ground? How did that happen?

A.      He was running at full tilt, and I was running also.  And as I approached him or caught up to him, he's still running, *and as I went to grab him from behind, I don't know if our legs got tangled or if we just tripped,* I'm not sure, but we both fell.  Both of us fell.

. . .

Q.      When you started falling, what happened in terms of impact?

A.      From what I recall, we both—as I grabbed him from behind, we both fell, and when we did, there was a parked car to the left.
        I remember that he either brushed or hit against it, and I fell over top of him and against the car and onto the road, with my right side of my face.

Q.      Now, when he hit this car, his head went through the window; correct? He broke the window?

A.      I didn't know that at the time.  I heard a noise, a popping sound, as we fell, but I don't know if it was the side mirror.  At that time, I had no idea what his head hit.

Q.      But you knew that his head hit the car?

A.      We both hit the car.

(Denning Dep., ECF No. 120-4 at 16-17 (pp. 59-62).) (emphasis added).

To determine if there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Here, the Court is presented with two versions of facts that go directly to the amount of force used by Defendant Denning: Whether Denning intentionally directed Plaintiff's head through the car window, or whether Denning and Plaintiff became entangled and tripped. A reasonable jury could conclude that intentionally directing a fleeing suspect's head through a car window was an unreasonable use of force under the circumstances. *See Rowe v. D. Baughman*, No. 2:10-cv-2843, 2013 WL 4095739, at *1 (E.D. Cal. Aug. 13, 2013) (summary judgment denied on excessive force claim where corrections officer crashed prisoner's head into window outside conference room in an effort to restore discipline) (adopting Report and Recommendation, 2013 WL 3490661, at *5 (E.D. Cal. July 10, 2013)). Therefore, Plaintiff has come forward with a question of material fact for the jury that must be decided in determining whether Defendant Denning used excessive force in apprehending Plaintiff.

Denning further argues that even if his use of force was objectively unreasonable, he is entitled to qualified immunity. An officer is entitled to qualified immunity when he makes a reasonable mistake as to what the law requires of him in a particular situation, *Saucier v. Katz*, 533 U.S. 194, 205 (2001), and will be denied qualified immunity only where he has violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). In determining whether to grant qualified immunity, the court must determine if the record establishes facts, construed in a light most favorable to the nonmoving party, to make out a violation of a constitutional right, and whether that right was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Here, the disputed issue as to whether Denning intentionally directed Plaintiff's head through the car window, or whether Denning and Plaintiff became entangled and tripped, precludes an award of qualified immunity. *See Curley v. Klem*, 499 F.3d 199, 278 (3d Cir. 2007) ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis"); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.").

Therefore, summary judgment must be denied as to Defendant Denning on the claim of excessive force. Likewise, Denning's motion relating to Plaintiff's claims for the intentional torts of assault and battery must also be denied.

### 3. Failure To Intervene Against Defendants Shapiro, Cole And Jones

Defendants Shapiro, Cole and Jones move for summary judgment (ECF No. 117) on Plaintiff's claim in Count IV that they failed to intervene to prevent Officers Denning, Gain, and Painter in their alleged use of excessive force.

In order to establish a claim for failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002); *McCullough v. Miller*, No. 06-514, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008). In determining whether an opportunity to intervene existed, courts consider many factors,

"including the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non-intervening officer to perceive and/or hear the alleged assault, etc." *McCullough*, 2008 WL 4361254, at *9 (citing *Swinyer v. Cole,* No. C04-5348, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); *Mitchell v. James*, No. 4:04CV1068, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)).

Plaintiff alleges that Denning used excessive force during his take down of Plaintiff when Plaintiff's head broke the car window. In light of the rapid succession of events leading to Denning's alleged use of excessive force, no reasonable jury could conclude that these Defendants would have had a realistic or reasonable opportunity to intervene. Plaintiff testified that when he attempted to flee as Denning released his grip on him to open the police vehicle door, Plaintiff ran "not too far" before Denning caught up with him. Under these circumstances, Defendants Shapiro, Cole and Jones would not have had a realistic opportunity to intervene.

As discussed at length above concerning Defendants Gain and Painter, Plaintiff has failed to come forward with an issue of material fact as to whether they used excessive force in that Plaintiff is unable to establish that they were personally involved in the alleged constitutional violation. *See* C.1. & 2., *supra.* Therefore, it necessarily follows that Plaintiff is unable to establish as a matter of law, the predicate constitutional violation necessary to establish the first element of a failure to intervene claim—that a constitutional violation took place in their presence or with their knowledge. *See McCullough*, 2008 WL 4361254, *9 ("[W]here there is no [constitutional] violation, there is no duty to intervene . . . .") (citing *Armbruster v. Marguccio*, No. CIV.A. 05-344J, 2006 WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006) ("Because the force used in this case was not constitutionally excessive, the other officers [sought to be held

liable for failing to intervene] cannot be held liable for failure to intervene or protect.")).[5] Therefore, Defendants Shapiro, Cole and Jones are entitled to judgment as a matter of law on Plaintiff's claim for failure to intervene.

4.    *Monell* Claim Against City Of Greensburg for Failure to Train and Supervise

Defendant City of Greensburg argues that it is entitled to judgment as a matter of law because Plaintiff has failed to come forward with evidence of a custom or pattern of its officers' use of excessive force and of the City's acquiescence to that conduct. The City further argues that Plaintiff has come forward with no evidence of an inadequate training program or a specific training deficiency that caused the alleged unconstitutional use of force. Finally, the City argues that Plaintiff can point to no pattern of prior similar incidents to demonstrate that it failed to adequately investigate complaints, discipline or otherwise supervise or control its officers. (City of Greensburg Brief in Support of Motion for Summary Judgment, ECF No. 116 at 15-21.)

Plaintiff responds that because the City was revising its use of force policy, it lacked any consistent policy for the use of force. Plaintiff further argues that there is no evidence the Greensburg Police have any training concerning arresting or otherwise dealing with suspects who have a medical emergency. In addition, Plaintiff argues that the City's failure to track police use of force incidents allows any officer to create a record of improper and unconstitutional use of force and never face investigation or discipline. Finally, Plaintiff argues that there are issues concerning the inconsistent discipline of officers such that those who are politically liked or who get "the drug cases" are treated less harshly. (Plaintiff's Responsive Brief, ECF No. 134 at 8-11.)

---

[5] To this end, record evidence reflects that these Defendant Officers did not observe Painter or Gain beat Plaintiff after Denning's take down. *See* Shapiro Dep., ECF No. 120-6 at 9 (p. 56); Cole Dep., ECF No. 120-8 at 6 (p. 20); Jones Dep., ECF No. 131 at 208 (p. 42). Similarly, Plaintiff's injuries were not consistent with a beating but with the inability to break his fall. *See* Mertz Dep., ECF No. 132 at 56 (p.44)).

In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link"

or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

The Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under § 1983 in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). Relying on the precepts set forth by the United States Supreme Court in *City of Canton v. Harris*, 489 U.S. 378 (1989), the *Sample* court noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' whether a natural one or a municipality, has exhibited deliberate indifference to the plight of the person deprived." *Sample*, 885 F.2d at 1118 (internal citation omitted). The Court continued that in order to establish supervisory liability, the plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure. 885 F.2d at 1118.

As to causation, the *Sample* court concluded as follows:

> On remand, the district court should bear in mind that under the teachings of *City of Canton* it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the "identified deficiency" and the "ultimate injury."

*Sample*, 885 F.2d at 1118.

The United States Court of Appeals for the Third Circuit has discussed a failure to train claim as follows:

> [A] municipality may be liable for the failure to train its employees only where that failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989); *see also Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005). In other words, a municipality can only be liable under § 1983 where the failure to train demonstrates a "deliberate" or "conscious" choice by the municipality. *Woloszyn*, 396 F.3d at 324 (citing *City of Canton*, 489 U.S. at 389. To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. N.Y.C.*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

*Doe v. Luzerne County*, 660 F.3d 169, 179-80 (3d Cir. 2011). "The deficiency of a municipality's training program must be closely related to the plaintiff's ultimate injuries." *City of Canton*, 489 U.S. at 391. That is, the plaintiff must "prove that the deficiency in training actually caused [the constitutional violation at issue]." *Id.*

Here, Plaintiff has failed to raise an issue of material fact as to the municipal liability of the City of Greensburg. First, as to the testimony that the City's excessive force policy was undergoing revisions, record evidence reflects that at the time of the incident, a Use of Force Policy was in place. (Zucco Dep., ECF No. 132 at 122 (p. 62).) That policy provided that "personnel shall never use a greater degree of force than that which is lawful, reasonable, and necessary for a specific situation." (Zucco Dep., ECF No. 132 at 122 (p. 62).) Plaintiff comes forward only with the speculation that because the use of force policy was undergoing revisions, there was no policy, and therefore, police were "authorized to use even excessive and

unconstitutional force to take a suspect into custody." (Plaintiff's Responsive Brief, ECF No. 134 at 8-9.) A nonmoving party must raise "more than a mere scintilla of evidence in its favor" and *cannot rely on unsupported assertions, conclusory allegations, or mere suspicions* in order to overcome a summary judgment motion." *Celotex Corp.*, 477 U.S. at 325 (emphasis added).

Similarly, Plaintiff's next argument misses the mark with regard to causation. Plaintiff contends that "there is no evidence the Greensburg Police [had] any training concerning arresting or otherwise dealing with suspects who have a medical emergency." (ECF No. 134 at 9.) Plaintiff's claims here concern Denning's alleged use of excessive force when he brought Plaintiff to the ground after he attempted to escape. Plaintiff makes no allegations that his medical needs were not met by Denning or any other officer at the scene. Therefore, the alleged training deficiency has no causal relationship to the injuries sustained by Plaintiff as a result of Denning's alleged use of excessive force. Moreover, Plaintiff has come forward with no evidence that these issues are not covered under the Commonwealth's annual mandatory training of municipal police officers delivered by the Municipal Police Officer's Education and Training Commission ("MPOETC"), or that Denning or other City of Greensburg officers were not in full compliance with this training at the time of the incident. *See* 37 Pa. Code §§ 203.13, 203.51 & 203.52, *discussed in, Ray v. Cain*, 2:13cv1483, 2016 WL 5468117, at *14 (W.D. Pa. Sept. 29, 2016). *See generally* Fanchalsky Dep., ECF No. 133 at 12 (pp. 26-27).

Next, Plaintiff directs the Court to Chief Zucco's deposition as to whether separate use of force reports are generated when a suspect is injured during an arrest. (Zucco Dep., ECF No. 132 at 130-131 (pp. 95-98).) Plaintiff contends that the failure to generate these reports allows officers to use improper force and never face an investigation or discipline. (Plaintiff's Responsive Brief, ECF No. 134 at 10.) Zucco explains, however, that all of this information is

placed in detailed police reports and amendments. (*Id.* at 130-131 (pp. 96-97).) Again, Plaintiff's theory is mere speculation and cannot withstand a motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 325.

Plaintiff's final argument too, is speculation. Plaintiff attempts to come forward with evidence of inconsistent discipline for officers depending upon "whether the person 'get[s] the drug cases' or is politically liked within the department." (ECF No. 134 at 10-11.) Plaintiff continues that "[t]he inconsistent discipline, especially to those offices [sic] who are liked including Gain and Denning, is no discipline and the rank and file officers are allowed to run amok without fear of reprimand or termination by management." (ECF No. 134 at 11.) Plaintiff concludes that the inconsistent disciplines constitute a "policy of deliberate indifference that again contributed to Mr. Waugaman's injuries." (*Id.*) Again, these unsupported assertions, conclusions and mere suspicions cannot overcome a properly supported motion for summary judgment. *See Celotex*, 477 U.S. at 325.

More specifically, Plaintiff comes forward with no evidence of a pattern of prior excessive force complaints, and thereby, no acquiescence by the City to prior uses of force. The record reflects that Defendant Denning had one prior allegation of excessive force, which was found not to violate the Constitution. (ECF Nos. 119 & 129 ¶ 134.) The record further reflects that Denning was disciplined for matters unrelated to the alleged use of excessive force: two failures to report to scheduled hearings and one failure to report for scheduled duty. (Id. at ¶ 133.) No reasonable jury could conclude on this record that the City of Greensburg had a custom or practice of acquiescing to its officers' use of excessive force such that it could be found deliberately indifference to the rights of its citizens with whom its officers come into contact.

Therefore, the Court must grant the City's Motion for Summary Judgment on Plaintiff's *Monell* claim.

Finally, because the City's Motion for Summary Judgment will be granted, the official capacity claims against the individual Defendants Denning, Gain, Shapiro, Cole and Jones must also be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (Suits against government employees in their official capacities "generally represent another way of pleading an action against an entity of which an officer is an agent.").

D.     CONCLUSION

For the reasons discussed above, the Motion for Summary Judgment filed by Defendants Bryan Painter and the Borough of South Greensburg (ECF No. 112) will be granted. The Motion for Summary Judgment filed by Defendants the City of Greensburg, Shawn Denning and Jason Gain (ECF No. 115) will be granted as to Defendant Gain and the City of Greensburg, and denied as to Defendant Denning. The Motion for Summary Judgment filed by Defendants Donald Cole, W. Robert Jones, and Robert Shapiro (ECF No. 117) will be granted.


An appropriate Order will follow.

Dated: June 7, 2019


BY THE COURT



s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge